**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


DWAYNE HOBY FAULKNER, JR.,

      Petitioner,

v.                             CASE NO. 4:24cv420-RH-MJF

RICKY D. DIXON,

      Respondent.

_____/


**ORDER DENYING THE PETITION**


By petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dwayne Hoby Faulkner, Jr. challenges state-court convictions on charges arising from theft of jewelry taken in two residential burglaries. Mr. Faulkner asserts his trial attorney rendered ineffective assistance by failing to call an alibi witness, Angell Aguilar, who, according to Mr. Faulkner, would have testified Mr. Faulkner was elsewhere at the time of the burglaries. The state postconviction court rejected the claim on the ground Mr. Aguilar was unavailable, but the state-court record does not establish this. Even so, Mr. Faulkner is not entitled to relief. He failed to develop the record in state court. The record does not show Mr. Aguilar would

have been available to give, or if available would actually have given, the alibi testimony.

The petition, which raises this and other issues, is before the court on the magistrate judge's report and recommendation, ECF No. 29. Mr. Faulkner was proceeding pro se at that time and did not file objections. Upon review of the report and recommendation, I appointed an attorney, who filed objections and briefed the issues. I have considered the objections de novo. This order accepts the report and recommendation and adopts it as the court's opinion except on two claims, both asserting ineffective assistance, first for failing to call Mr. Aguilar, and second for failing to publish an entire videorecording that was admitted into evidence; only snippets were published. In the objections, Mr. Faulkner has explicitly waived his other claims.

## I. Facts

On August 16, 2012, Gina Weaver returned home and discovered her house had been burglarized. ECF No. 18-2 at 86. Missing property included pieces of jewelry custom-made at Tallahassee Diamond Center ("TDC"). *See id.* at 87–88 & 91. Ms. Weaver promptly reported the burglary to law enforcement. *Id.* at 90. She also reported it to Cheryl Everett, whose husband Sean Everett owned TDC, asking them to be on the lookout for the jewelry. *Id.* at 91 & 133-35.

Perhaps remarkably, Mr. Faulkner and Mr. Aguilar were at TDC at that very time attempting either to sell the jewelry (as the state contends) or to have it appraised (as Mr. Faulkner contends). The TDC security system recorded their entire visit to TDC. Mr. Faulkner took the lead throughout the encounter and said the jewelry was his grandmother's. *See id.* at 115, 150, 175, & 261. Mr. Everett recognized the jewelry as having been made by TDC for a customer, and he surreptitiously contacted law enforcement. *Id.* at 174–75. Mr. Everett could not remember which customer the jewelry was made for until Ms. Everett called to advise him of Ms. Weaver's report. At that point Mr. Everett made the connection: Mr. Faulkner and Mr. Aguilar were in the store in possession of the jewelry taken in the burglary.

Law enforcement arrived at TDC while Mr. Faulkner and Mr. Aguilar were still there. Ms. Weaver arrived and identified her jewelry. *See id.* at 96–97. Mr. Faulkner did not contest her claim or seem surprised by it. *See* Video Exhibit 01:12:00–01:14:00. When advised of his rights, Mr. Faulkner elected to remain silent. Mr. Faulkner and Mr. Aguilar were arrested.

Law enforcement learned later that the home of Ms. Weaver's neighbor, George Lewis, was also burglarized on August 16, 2012. *See* ECF No. 18-2 at 51–52 & 73–83. As it turned out, the jewelry Mr. Faulkner and Mr. Aguilar had with them at TDC also included jewelry taken in the Lewis burglary. *Id.* at 63.

## II. The trial

In due course an information charged Mr. Faulkner and Mr. Aguilar with offenses arising from the Weaver and Lewis burglaries and their possession of the stolen property. Mr. Aguilar pled no contest and was sentenced on one count of burglary and one count of grand theft. ECF No. 18-9 at 257. Mr. Faulkner fled but was eventually found and tried alone in 2018 on an amended information charging him with six offenses: burglary of the Weaver and Lewis residences (counts 1 and 6), theft of property from the Weaver and Lewis residences (counts 3 and 7), trafficking in stolen Weaver property (count 2), and possessing ammunition as a convicted felon (count 4). *See* ECF No. 18-1. The amended information charged Mr. Aguilar alone with carrying a concealed weapon—razor blades—as a convicted felon (count 5).

Evidence at trial confirmed with no meaningful dispute that the Weaver and Lewis homes were burglarized and high-value, custom-made jewelry was stolen; that, soon after, Mr. Faulkner and Mr. Aguilar showed up at TDC with the stolen jewelry; that Mr. Faulkner said the jewelry was his grandmother's; and that, as Mr. Faulkner knew, the jewelry was not in fact his grandmother's.

Mr. Faulkner testified in his own defense. *See* ECF No. 18-2 at 250–307. He said he was home from college temporarily residing with Mr. Aguilar, whose father had a painting company with a contract to paint student apartments between

semesters. Mr. Faulkner was working for the company and claimed to be a part owner. He had left his motorcycle back at college, so he relied on Mr. Aguilar for transportation. On the day of the burglaries, Mr. Aguilar drove Mr. Faulkner to work at 7:00 a.m., and he stayed there until 3:00 or 3:30 p.m., when Mr. Aguilar picked him up. *See id.* at 256–58.

Mr. Faulkner said that when he told TDC employees and law enforcement officers that the jewelry was his grandmother's, he meant Mr. Aguilar's grandmother, with whom Mr. Faulkner said he was close. *Id.* at 261. Mr. Faulkner attempted to explain that he had been told by Mr. Aguilar *at the job site*—before they went to TDC—that the jewelry was Mr. Aguilar's grandmother's, but the trial court inexplicably sustained a hearsay objection. *Id.* at 261–62.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted*." Fla. Stat. 90.801(1)(b); *see also* Fed. R. Evid. 801(a)(c)(2) (explicitly providing that the substantively identical federal hearsay rule applies only to a statement offered "to prove the truth of the matter asserted *in the statement*") (emphasis added). Mr. Faulkner offered Mr. Aguilar's statement not to prove it was true—not to prove the jewelry actually belonged to Mr. Aguilar's grandmother—but to prove what Mr. Faulkner believed about the jewelry. This was not inadmissible hearsay because, regardless of whether true, Mr. Aguilar's

purported statement showed information allegedly available to Mr. Faulkner explaining his knowledge and intent. What Mr. Faulkner knew or did not know about the source of the jewelry was a critical issue—indeed, the most critical issue in the case—and what Mr. Faulkner had been told on that subject was plainly admissible.

The effect of the erroneous ruling was mitigated, but only somewhat, when Mr. Faulkner said on cross-examination that Mr. Aguilar said *while at TDC* that the jewelry was Mr. Aguilar's grandmother's, and Mr. Faulkner believed it. ECF No. 18-2 at 292–93.

The jury convicted Mr. Faulkner on both theft counts but not guilty on the burglary counts. The jury found Mr. Faulkner not guilty on the trafficking-in-stolen-property count, undoubtedly because under Florida law—and the corresponding jury instruction—a defendant cannot properly be convicted of both theft and trafficking in the same stolen property. In a bifurcated proceeding after return of the verdict on those counts, the jury found Mr. Faulkner guilty of possessing ammunition as a convicted felon.

Had Mr. Faulkner been convicted of burglary, he would have been sentenced as a prison releasee reoffender to a minimum mandatory 30-year prison term. *See* Fla. Stat. § 775.082(9). As it turned out, the court ran the sentences on the counts of conviction consecutively as needed to produce a total sentence of 30 years in

prison. *See* ECF No. 18-3 at 9. Under Florida law, a defendant must serve a minimum mandatory sentence in full without reduction based on good conduct, so the acquittal on the burglary charges made a difference, despite the 30-year sentence on the counts of conviction. *See* Fla. Stat. § 775.082(9)(b).

### III. Postconviction proceedings

Mr. Faulkner moved for relief under Florida Rule of Criminal Procedure 3.850 on seven grounds. They included the two ineffective-assistance-of-counsel claims addressed in this order: first, failing to call Mr. Aguilar as an alibi witness, and second, failing to publish the entire videorecording, rather than only snippets, of the events at TDC prior to Mr. Faulkner's invocation of the right to remain silent. The state postconviction court conducted an evidentiary hearing on three of the seven grounds, including the two addressed here. ECF No. 18-9 at 118. Mr. Faulkner and his trial attorney were the only witnesses. *See id.* at 334–410 (transcript of evidentiary hearing). The court denied relief across the board. *Id.* at 324–26. The state intermediate appellate court affirmed without explanation. No further review was available in state court.

Having thus exhausted his state remedies, Mr. Faulkner filed the pending § 2254 petition in this court on essentially the same grounds. As noted above, this order adopts the magistrate judge's report and recommendation except on the alibi and videoconference ineffective-assistance claims.

## IV. Ineffective-assistance standards

The Supreme Court has set out the standards governing ineffective-assistance claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or  . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). In short, to prevail on an ineffective-assistance claim, a defendant must show both deficient performance and prejudice.

The report and recommendation accurately addresses these standards at greater length. That discussion is adopted here.

## V. AEDPA standards

The Antiterrorism and Effective Death Penalty Act imposes both substantive and procedural limits on a federal habeas court's ability to set aside a state-court conviction. Two provisions are critically important here.

### 1. Deference to a state-court ruling on the merits

A federal habeas court may set aside a state court's ruling on the merits of a petitioner's claim only if the ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the ruling "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A long and ever-growing line of cases addresses these standards. *See, e.g.*, *Shinn v. Kayer*, 592 U.S. 111, 118 (2020); *Williams v. Taylor*, 529 U.S. 362 (2000); *Raheem v. GDCP Warden*, 995 F.3d 895, 907 (11th Cir. 2021).

To warrant federal relief, the state court's application of federal law must be "objectively unreasonable," *Renico v. Lett*, 559 U.S. 766, 773 (2010). This means "the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn*, 592 U.S. at 118 (quotations omitted). "This distinction creates a substantially higher threshold for obtaining relief than de novo review." *Renico*, 559 U.S. at 773 (quotation omitted).

For this purpose, a federal habeas court properly looks through an unexplained appellate decision to the explanation provided by the lower court. *See, e.g.*, *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). The state court's findings of fact are entitled to a presumption of correctness unless rebutted by clear and convincing

evidence. *Conner v. GDCP Warden*, 784 F.3d 752, 761 (11th Cir. 2015); *see also* 28 U.S.C. § 2254(e)(1).

The report and recommendation accurately addresses these standards at greater length. That discussion is adopted here.

### 2. *Restrictions on federal evidence*

Under 28 U.S.C. § 2254(e)(2), if a petitioner "failed to develop the factual basis of a claim in State court proceedings," a federal habeas court can hold an evidentiary hearing only if (A) the claim relies on (i) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

## VI. Alibi witness

Mr. Faulkner told his trial attorney well prior to trial that Mr. Aguilar would provide alibi testimony—would testify he dropped off Mr. Faulker at the job site that morning and picked him up that afternoon—just as Mr. Faulkner still claims. The attorney filed a timely pretrial notice of alibi on this basis. *See* ECF No. 18-9

at 385–86. But the attorney did not talk to Mr. Aguilar prior to trial and did not call him as a witness. Mr. Faulkner asserts this was ineffective assistance.

### A. *The reason for not calling the witness*

At the state postconviction hearing, the attorney gave this account of his failure to call Mr. Aguilar as a witness at the trial.

The attorney attempted to talk to Mr. Aguilar while he was serving his sentence in the Department of Corrections but for unexplained reasons was unable to do so. *Id.* at 388. Mr. Aguilar was released from custody before Mr. Faulkner's trial. Department of Corrections records showed Mr. Aguilar's last known address as a Tallahassee homeless shelter. *See id.* at 387. The attorney went there, looked around, could not find Mr. Aguilar, and talked to nobody. *Id.* at 388–89. The attorney had an available investigator but chose not to use him or take any other steps to find Mr. Aguilar. *Id.* at 389. The attorney could not remember why. *Id.* End of story.

The attorney did not testify at the postconviction hearing that he had any strategic reason for taking no further steps to find Mr. Aguilar or for not calling him as a witness at trial. Some possible explanations come to mind: Mr. Aguilar might not testify as expected regardless of what he might say in advance; Mr. Aguilar might implicate Mr. Faulkner in the burglaries; Mr. Aguilar might acknowledge he and Mr. Faulkner were attempting to sell the jewelry, not just

obtain an appraisal as Mr. Faulkner would assert at trial; Mr. Aguilar might not withstand cross-examination on the grandmother story or might wind up acknowledging Mr. Faulkner could not reasonably have believed the grandmother story; and Mr. Aguilar might at least be tripped up on cross-examination sufficiently to undermine, rather than support, Mr. Faulkner's defense. Indeed, a shaky performance by Mr. Aguilar might worsen Mr. Faulkner's chances on the burglary charges.

The attorney said none of this. The attorney's sole explanation was that Mr. Aguilar was unavailable.

## B. Deficient performance

The state postconviction court accepted the attorney's testimony and denied relief on the ground that Mr. Aguilar was indeed unavailable—that the attorney did not render ineffective assistance by making no further effort to find Mr. Aguilar, learn what he would say, and call him as a witness. ECF No. 18-9 at 325.

Mr. Faulkner now argues with considerable force that this was an unreasonable determination of the facts in light of the state-court record. This order assumes without deciding that the attorney rendered deficient performance in this respect.

## C. Prejudice

Even so, Mr. Faulkner is not entitled to relief. The burden of proof in the state postconviction hearing was on Mr. Faulkner. He failed to prove facts essential to this claim. The record includes no admissible evidence that Mr. Aguilar would have testified as Mr. Faulkner asserts—nothing other than Mr. Faulkner's assertion. The record includes no evidence of where Mr. Aguilar was at the time of trial—no evidence that a diligent attorney or investigator could have found him and gotten him to trial either voluntarily or with a subpoena.

Based on the state-court record, Mr. Faulkner's claim fails not because he has not shown deficient performance but because he has not shown prejudice.

## D. Federal evidentiary hearing

Perhaps recognizing these failures of proof, Mr. Faulkner requests an evidentiary hearing in this court. The request runs headlong into § 2254(e)(2), which applies when a federal habeas petitioner failed to develop the factual basis of a claim in state court.

### 1. Failure to develop the factual basis in state court

The state postconviction court granted Mr. Faulkner's request for an evidentiary hearing on this claim. He was represented by a postconviction attorney and had a full and fair opportunity to develop the factual basis of the claim. But he

failed to do so—failed to prove that his trial attorney's deficient performance caused prejudice.

The chronology is this. Mr. Faulkner filed his pro se Florida Rule of Criminal Procedure 3.850 motion asserting this claim on January 20, 2021. *See* ECF No. 18-9 at 5. The postconviction attorney appeared on September 28, 2021. *Id.* at 230. The court set an evidentiary hearing more than a year later, on January 23, 2023, but the attorney failed to show up, apparently because of a family medical emergency. *See* ECF No. 18-9 at 232. The court rescheduled the hearing for a week later, January 30, 2023. *Id.* By that time the 3.850 motion had been pending for more than two years. Mr. Faulkner had sought no discovery and submitted no declarations.

The attorney was present at the January 30 hearing and suggested Mr. Aguilar, who by then was living in Texas, was willing to come to Florida to testify. *See id.* at 335–36. But the attorney asked for another continuance, saying Mr. Aguilar had been unable to come to Florida on that date. The court denied a continuance but granted the attorney's alternative request to present Mr. Aguilar's testimony by videoconference. The attorney still did not call Mr. Aguilar as a witness, saying he was unavailable at that time even by videoconference. *Id.* at 336.

The attorney asked to hold the record open so that Mr. Aguilar could be deposed. ECF No. 18-9 at 339 & 409. The court initially took the request under advisement, waiting to hear the evidence presented at the hearing, and then ruled on the merits, implicitly denying the request to hold the record open. *Id.* The record did not—and still does not—include any competent evidence of where Mr. Aguilar was at the time of trial or what Mr. Aguilar would have testified at the trial or at the postconviction hearing if called as a witness.

Mr. Aguilar's claimed inability to testify at the postconviction hearing even by videoconference casts at least some doubt on whether he would indeed testify as Mr. Faulkner claims—that he would indeed say he delivered Mr. Faulkner to a job site and left him there through the time of the burglaries. In any event, one cannot reasonably fault the state postconviction court for not continuing the evidentiary hearing on an unsupported assertion of witness unavailability first presented at the time of the hearing. Or for not holding the record open under these circumstances. Nothing in the record suggests the state court's refusal to further continue the hearing or failure to allow post-hearing evidence departed from the state court's usual practice or was improper in any respect.

This history makes clear that Mr. Faulkner failed to develop the factual basis of this claim in state court. This is not a case like *Barnes v. Elo*, 231 F.3d 1025 (6th Cir. 2000), relied upon by Mr. Faulkner, in which the state court denied the

petitioner any postconviction evidentiary hearing at all on a much stronger ineffective-assistance-of-counsel claim. A substantial line of Eleventh Circuit decisions confirms that a petitioner fails to develop a factual basis for a claim when given an opportunity in state court analogous to the opportunity Mr. Faulkner was given. *See, e.g., Ward v. Hall,* 592 F.3d 1144, 1160 (11th Cir. 2010) (applying § 2254(e)(2) when the petitioner was granted a state-court evidentiary hearing and "was afforded approximately three years to secure affidavits and witness testimony prior to" the hearing); *Chandler v. McDonough,* 471 F.3d 1360, 1362 (11th Cir. 2006) (applying § 2254(e)(2) when the petitioner "was given an evidentiary hearing on the claim in state court"); *Arthur v. Allen,* 452 F.3d 1234, 1248 (11th Cir. 2006) (applying § 2254(e)(2) when the petitioner "failed to pursue the testing of the requested crime-related physical evidence during his three trials or through a state postconviction relief petition"); *McNair v. Campbell,* 416 F.3d 1291, 1298–1300 (11th Cir. 2005) (applying § 2254(e)(2) when the state court granted a hearing but denied untimely requests for expert funds, the petitioner could have developed evidence in less costly ways, and the petitioner did not pursue the argument on state collateral appeal).

To be sure, the failure to develop the state-court record was almost surely attributable to Mr. Faulkner's state postconviction attorney, not directly to Mr. Faulkner himself. The attorney had more than a year to obtain a declaration from

or deposition of Mr. Aguilar, and the attorney had adequate notice of the evidentiary hearing, both as originally scheduled and as continued. This order assumes without deciding that the postconviction attorney's failure to present Mr. Aguilar's testimony in support of the 3.850 motion, like the trial attorney's failure to find Mr. Aguilar or present his testimony at trial, constituted deficient performance. But the Supreme Court has made clear this does not matter: "We now hold that, under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022).

### 2. Failure to meet the 2254(e)(2) conditions

Under § 2254(e)(2), Mr. Faulkner's failure to develop the factual basis of this claim in state court means that an evidentiary hearing can go forward in federal court only if the claim meets the specific conditions set out in the statute. The claim does not meet those conditions.

The claim does not rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2254(e)(2)(A)(i). The claim does not rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." § 2254(e)(2)(A)(ii). And "the facts underlying the claim" would not be

"sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." § 2254(2)(B). Mr. Faulkner is not entitled to—indeed, not eligible for—an evidentiary hearing in this court. *See Shoop v. Twyford*, 596 U.S. 811, 820 (2022) (holding that when a petitioner cannot meet the requirements of § 2254(e)(2), evidence developed during the federal proceeding cannot be considered on an ineffective-assistance claim the state court rejected) (citing *Shinn*, 596 U.S. at 389).

## VII. Videorecording

The state introduced into evidence the entire TDC videorecording up to a point just before Mr. Faulkner invoked his right to remain silent. But the parties published—played for the jury—only snippets. Mr. Faulkner asserts his trial attorney rendered ineffective assistance by failing to publish the remainder of the exhibit. Not so. The state court correctly ruled that the trial attorney's performance was not deficient in this respect.

The exhibit was part of the state-court record. After issuance of the report and recommendation, the petitioner filed a copy in this court on a DVD that could not be viewed on the court's current operating system. The court's systems staff copied the exhibit onto a thumb-drive which is now part of this court's record. The exhibit has been reviewed in its entirety. The videorecording is inculpatory

throughout. Playing more of it would have wasted a substantial amount of time but would not have helped Mr. Faulkner. The state court's ruling was correct—and the ruling here would be the same even on de novo review.

## VIII.    Certificate of appealability

Rule 11 of the Rules Governing § 2254 Cases requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (setting out the standards applicable to a § 2254 petition on the merits). As the Court said in *Slack*:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' "

529 U.S. at 483-84 (quoting *Barefoot*, 463 U.S. at 893 n.4). Further, to obtain a certificate of appealability when dismissal is based on procedural grounds, a petitioner must show, "at least, that jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

Mr. Faulkner has made a substantial showing that his trial attorney rendered deficient performance in failing to make a greater effort to locate Mr. Aguilar prior to the trial. But Mr. Faulkner plainly has not established that a greater effort would have located Mr. Aguilar, that he could have been subpoenaed or would have appeared voluntarily, or that he would have testified as Mr. Faulkner claims. Reasonable jurists could not disagree on these points.

Mr. Faulkner has made a substantial showing that his state postconviction attorney rendered deficient performance by failing to make a greater effort to present Mr. Aguilar's testimony in support of the 3.850 motion. But again, Mr. Faulkner plainly has not established what Mr. Aguilar would have testified or even that he was willing to do so. Reasonable jurists could not disagree on these points.

Reasonable jurists could debate the holding in *Shinn*—there were, after all, dissenting justices—but based on *Shinn*, reasonable jurists could not debate whether Mr. Faulkner is entitled to a federal evidentiary hearing. And without further evidence, reasonable jurists could not debate whether Mr. Faulkner is entitled to relief.

In sum, Mr. Faulkner has not made the showing required for a certificate of appealability.

## IX. Conclusion

For these reasons,

IT IS ORDERED:

1. The report and recommendation is accepted and adopted as the court's further opinion except in respects inconsistent with this order.

2. The clerk must enter judgment stating, "The petition is denied with prejudice."

3. A certificate of appealability is denied.

4. The clerk must close the file.

SO ORDERED on August 1, 2026.

s/Robert L. Hinkle
United States District Judge